## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KELLY A.S.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 21-CV-1006-JAR** |
| **KILOLO KIJAKAZI, Commissioner of Social Security** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff's application for disability and disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff asserts that substantial evidence does not support the administrative law judge's ("ALJ") determination, at step two of the five-step sequential evaluation for determining whether a claimant is disabled, that Plaintiff did not have a medically determinable mental impairment. Plaintiff also contends that the ALJ's error at step two was not harmless error. Because the Court concludes that the Commissioner's findings are supported by substantial evidence, the Court affirms the Commissioner's decision.

## I.    Procedural History

On April 13, 2018, Plaintiff protectively applied for a period of disability, disability insurance benefits, and supplemental social security income benefits. In both applications, she alleged a disability onset date of May 15, 2014. Plaintiff's applications were denied initially and upon reconsideration. She then asked for a hearing before an ALJ.

After a hearing on October 10, 2019, the ALJ issued a written decision on February 25, 2020, finding that Plaintiff was not disabled.   Given the unfavorable result, Plaintiff requested reconsideration of the ALJ's decision from the Appeals Council.  Plaintiff's request for review was denied on November 13, 2020.  Accordingly, the ALJ's February 2020 decision became the final decision of the Commissioner.

Plaintiff filed a Complaint in the United States District Court for the District of Kansas. She seeks reversal of the ALJ's decision and remand.  Because Plaintiff has exhausted all administrative remedies available, this Court has jurisdiction to review the decision.

## II.    Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether the Commissioner's decision is supported by substantial evidence in the record as a whole and whether the Commissioner applied the correct legal standards.[1]  The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2]  In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[3]

## III.    Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[4]

An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he

---

[1] *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

[2] *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (quoting *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[3] *Id.*

[4] 42 U.S.C. §§ 423(d)(2)(A), 416(i)(1)(a).

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .[5]

Pursuant to the Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[6]  The steps are designed to be followed in order.  If it is determined, at any step of the evaluation process, that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[7]

The first three steps of the sequential evaluation require the Commissioner to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability, (2) whether the claimant has a severe impairment, or combination of severe impairments, and (3) whether the severity of those impairments meets or equals a designated list of impairments.[8]  "If the impairment does not meet or equal a listed impairment, the ALJ must determine the claimant's [residual functioning capacity ("RFC")], which is [the claimant's] ability to do physical and mental work activities on a sustained basis despite limitations from [his] impairments."[9]

Upon assessing the claimant's RFC, the Commissioner moves on to steps four and five, which require the Commissioner to determine whether the claimant can either perform her past relevant work or whether she can generally perform other work that exists in the national

---

[5] *Id*. § 423(d)(2)(A).

[6] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a).

[7] *Barkley v. Astrue*, No. 09-1163-JTM, 2010 WL 3001753, at *2 (D. Kan. Jul. 28, 2010).

[8] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (first quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); and then quoting *Williams v. Brown*, 844 F.2d 748, 751 (10th Cir. 1988)); *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[9] *Barkley*, 2010 WL 3001753, at *2 (citing 20 C.F.R. § 416.920(e)); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

economy, respectively.[10]  The claimant bears the burden in steps one through four to prove a disability that prevents performance of his past relevant work.[11]  The burden then shifts to the Commissioner at step five to show that, despite the claimant's alleged impairments, the claimant could perform other work in the national economy.[12]

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date.  He determined at step two that Plaintiff had the following severe impairments: supraventricular tachycardia, neuropathy, atrial fibrillation, and obesity.  At step three, the ALJ found that Plaintiff's impairments did not meet or equal the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.  Continuing, he determined that Plaintiff had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant may only occasionally climb ramps and stairs; may not climb ladders, ropes, or scaffolds; may not be exposed to hazards such as dangerous machinery or unprotected heights; and should avoid concentrated exposure to humidity, temperature, and weather extremes, and pulmonary irritants (for example fumes, dusts, gases, poor ventilation).[13]

The ALJ determined at step four that Plaintiff did not have any past relevant work.  After considering Plaintiff's age, education, work experience, and RFC, he determined at step five that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."[14]  Thus, the ALJ concluded that Plaintiff had not been under a disability from May 15, 2014, through the date of his decision.

---

[10] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[11] *Lax*, 489 F.3d at 1084 (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005)).

[12] *Id*. (quoting *Hackett*, 395 F.3d at 1171).

[13] Doc. 14-3 at 21.

[14] *Id*. at 27.

**IV.    Discussion**

Plaintiff contends that substantial evidence does not support the ALJ's determination at step two that she did not have a medically determinable mental impairment.  Plaintiff also asserts that the ALJ's error was not harmless because this determination impacted Plaintiff's RFC.  The Commissioner argues that the ALJ reasonably concluded that Plaintiff did not have a medically determinable health impairment because the psychologist's findings were not valid due to Plaintiff's behavior.  In addition, the Commissioner contends that the ALJ nevertheless considered Plaintiff's mental health functioning in the context of evaluating Plaintiff's substance abuse disorder and when formulating Plaintiff's RFC.  Finally, the Commissioner asserts that even if the ALJ erred in concluding that Plaintiff did not have a medically determinable mental health impairment other than substance abuse disorder, there is no evidence that this finding caused harm.

At step two, the ALJ determines whether the plaintiff demonstrates a severe medically determinable physical or mental impairment that has lasted or is expected to last twelve continuous months.[15]  "A physical or mental impairment must be established by medical evidence and must result from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."[16]  A plaintiff "cannot establish a medically determinable physical or mental impairment without objective

---

[15] *Robinson v. Berryhill*, No. 17-1254-KHV, 2018 WL 2198645, at *4 (D. Kan. May 14, 2018) (citing 20 C.F.R. §§ 404.1420(a)(4)(ii), 404.1509)).

[16] *Id.* (citing 20 C.F.R. §§ 404.1420(a)(4)(ii), 404.1421).

evidence, e.g. medical signs and laboratory findings."[17]  An impairment is considered severe if it significantly limits the plaintiff's physical or mental ability to do basic work activities.[18]

Here, at step two, the ALJ found that Plaintiff had four severe impairments: supraventricular tachycardia, neuropathy, atrial fibrillation, and obesity.  He also noted that she had a non-severe medically determinable mental impairment of substance abuse disorder that did not cause more than minimal limitations in Plaintiff's ability to perform basic mental work activities.  The ALJ did not find any other medically determinable mental severe impairments.

In the ALJ's step-two discussion, he noted the four broad functional areas of mental functioning and found that Plaintiff either had no limitations or no more than mild limitations in these areas.  He specifically discussed the opinion of Dr. Gary Hackney, a consultative examiner. Dr. Hackney found that Plaintiff had borderline personality disorder, bipolar disorder, social anxiety disorder, post-traumatic stress disorder ("PTSD"), mild intellectual disability, and a series of substance abuse disorders in sustained remission.  Dr. Hackney also opined that Plaintiff had marked limitations in essentially all four functional areas.  The ALJ found, however, that Dr. Hackney's findings regarding these limitations were not a "reliable indicator of the claimant's true capabilities" because Plaintiff was extremely non-cooperative, lacked focus, and refused to do the tasks asked of her during the consultive exam.[19]

Plaintiff contends that the ALJ went beyond his zone of discretion by discrediting Dr. Hackney's clinical judgment that Plaintiff suffered from a medically determinable mental impairment.  The Commissioner asserts that the ALJ reasonably concluded that Plaintiff failed to

---

[17] *Id.*

[18] *Id.* at *5 (first citing *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); and then citing 20 C.F.R. §§ 404.1520(c), 404.1522).

[19] Doc. 14-3 at 19.

establish that she had any medically determinable mental health impairment other than substance abuse disorder.  The Commissioner notes that Plaintiff did not allege any mental health conditions in her disability reports and did not have any mental health treatment.  The only evidence of a mental health condition was Dr. Hackney's findings from his exam of Plaintiff.  Dr. Hackney found that Plaintiff had marked limitations in several areas, but he also observed that Plaintiff was extremely uncooperative and did not perform many tasks simply because Plaintiff did not want to do them.

In addition, the ALJ elaborated in his step-four discussion relating to Plaintiff's RFC that the evidence did not support a medically determinable mental health impairment other than substance abuse disorder.   The ALJ noted that other than Dr. Hackney's determination that Plaintiff had PTSD, depression, anxiety disorder, and borderline personality disorder, the other state agency psychological consultants found no medically determinable mental health impairments.  The ALJ stated that there were no findings or reliable testing results to support a medically determinable mental health disorder.  Specifically, the ALJ found that the limitations noted by Dr. Hackney's testing were not reliable because of Plaintiff's non-cooperation during the examination.  She was "extremely non cooperative, unpleasant, hostile, evasive, and negative."[20]  And the ALJ noted Dr. Hackney's statement that Plaintiff "refused to try a number of tasks because she didn't want to do so, was not focused whatsoever during testing, would not perform tasks, gave only minimal history information, refused to try, and simply responded with 'I don't know's' [sic] when asked questions."[21]  Finally, the ALJ found that Dr. Hackney's opinions regarding Plaintiff's marked limitations were not consistent with Plaintiff's daily

---

[20] *Id*. at 25.

[21] *Id.*

activities, the medical evidence of record,[22] or interactions with other medical providers.[23]  Thus, the ALJ concluded that Dr. Hackney's opinions regarding Plaintiff's limitations were not reliable.  In sum, the ALJ articulated sufficient reasons demonstrating that substantial evidence supports his finding that Plaintiff did not have any medically determinable mental impairments other than substance abuse.

Finally, even if it was error for the ALJ to determine that Plaintiff did not have the medically determinable impairments of PTSD, depression, anxiety disorder, and borderline personality disorder, it was harmless. The ALJ found four severe medically determinable impairments and one non-severe medically determinable mental impairment of substance abuse. "[T]he failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe."[24]  Even if the ALJ erred in failing to find Plaintiff's PTSD, depression, anxiety disorder, and borderline personality disorder as medically determinable impairments, "the Tenth Circuit has stated that 'a failure to find an impairment medically determinable is essentially a step-four error,' which can 'be obviated if the ALJ considered the non-medically determinable impairment in assessing the RFC.'"[25]  Here, as noted above, the ALJ thoroughly discussed the evidence regarding Plaintiff's mental health impairments and limitations—either through Plaintiff's non-severe substance abuse disorder or

---

[22] There was no other evidence of mental health impairments.

[23] Plaintiff's other medical evidence "repeatedly characterized the claimant as cooperative, pleasant, and the like . . . and does not include any mention of concerns regarding the claimant's cognitive abilities and/or abilities to manage her medication, or need of close supervision, which would be expected with the opined marked limitations and full scale IQ of 53." *Id.*

[24] *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016).

[25] *Bryant v. Berryhill*, No. 15-1151-HE, 2017 WL 401263, at *5 (W.D. Okla. Jan. 30, 2017) (quoting *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016)).

the functional limitations proposed by Dr. Hackney—in assessing Plaintiff's RFC.  Accordingly, there is no basis to reverse the ALJ's decision.

**V.      Conclusion**

The ALJ's RFC determination is supported by substantial evidence.  Plaintiff has not shown that the ALJ's decision is inconsistent with the Social Security Act, regulations, and applicable case law.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: February 4, 2022

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE